Citation Nr: AXXXXXXXX
Decision Date: 10/29/21 Archive Date: 10/29/21

DOCKET NO. 190923-33239
DATE: October 29, 2021

ORDER

Service connection for post-traumatic stress disorder (PTSD) is denied.

FINDING OF FACT

The Veteran's PTSD did not originate in-service or until years after service and any current diagnosis is not based on any military occurrence or verified stressor.

CONCLUSION OF LAW

The criteria to establish service connection for PTSD have not been met. 38 U.S.C. §§ 1110, 1131, 5103, 5103A, 5107; 38 C.F.R. §§ 3.102, 3.159, 3.303.

REASONS AND BASES FOR FINDING AND CONCLUSION

The Veteran had active service from November 1975 to January 1976. 

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with VA's decision on their claim to seek review. This decision has been written consistent with the new AMA framework.

The Veteran requested the AMA Hearing Lane in September 2019. The undersigned held the hearing in April 2021, and a transcript is in the Veteran's electronic record.

The Veteran's sole contention is that he has PTSD that is related to his service. Therefore, the following analysis will address only the issue of service connection for PTSD. 

The evidence does not show that the Veteran has a diagnosis of PTSD that conforms to the legal requirements of 38 C.F.R. § 3.304(f), and the claim will be denied.

Service Connection

Service connection may be granted for current disability arising from disease or injury incurred or aggravated by active service. 38 U.S.C. § 1110. Service connection may be granted for any disease diagnosed after discharge when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d). Service connection generally requires (1) medical evidence of a current disability; (2) medical or, in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between the claimed in-service disease or injury and the current disability. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004).

Service connection for PTSD requires medical evidence diagnosing the condition; a link, established by medical evidence, between current symptoms and an in-service stressor; and credible supporting evidence that the claimed in-service stressor occurred. 38 C.F.R. § 3.304.

Service connection for PTSD is denied. 

The Veteran's current contention is that he has PTSD that his related to his service when he was assaulted in basic training while at Parris Island, South Carolina. In his April 2021 Board hearing, he testified that he feared retaliation following the incident.

The preponderance of the evidence is against the claim and the appeal will be denied.

As noted above, the Veteran served from November 1975 to January 1976. In April 2021, the Veteran testified in substance that when undergoing rehabilitation in recruit training for a back strain, he was essentially singled out for harassment. He stated that after he returned to his unit, he was assaulted and threatened by his drill instructors. He stated that he did not report these incidents, and he could not remember the names of his alleged assailants or his fellow training platoon members. He also alleged that his records were "sealed," although he did not know the reason behind this action. 

The Veteran's military personnel records show that he was discharged by reason of a character and behavior disorder that existed prior to service, that would have been difficult to detect by the recruiting station/medical examining facility prior to enlistment, before completing basic training. It was specifically noted that the Veteran made no allegations against drill instructors. The Veteran was not exposed to combat during his period of approximately two months of active service. 

Generally, where a determination is made that a veteran did not "engage in combat with the enemy," or the claimed stressor is not related to combat, a veteran's lay testimony alone will not be enough to establish the occurrence of the alleged stressor. See Moreau v. Brown, 9 Vet. App. 389, 395 (1996). In such cases, the record must contain service records or other corroborative evidence that substantiates or verifies the veteran's testimony or statements as to the occurrence of the claimed stressor. See West v. Brown, 7 Vet. App. 70, 76 (1994).

If a stressor claimed by a Veteran is related to the veteran's fear of hostile military or terrorist activity and a VA psychiatrist or psychologist, or a psychiatrist or psychologist with whom VA has contracted, confirms that the claimed stressor is adequate to support a diagnosis of PTSD and that the Veteran's symptoms are related to the claimed stressor, in the absence of clear and convincing evidence to the contrary, and provided the claimed stressor is consistent with the places, types, and circumstances of the Veteran's service, the Veteran's lay testimony alone may establish the occurrence of the claimed in-service stressor. For purposes of this paragraph, "fear of hostile military or terrorist activity" means that a Veteran experienced, witnessed, or was confronted with an event or circumstance that involved actual or threatened death or serious injury, or a threat to the physical integrity of the Veteran or others, such as from an actual or potential improvised explosive device; vehicle-imbedded explosive device; incoming artillery, rocket, or mortar fire; grenade; small arms fire, including suspected sniper fire; or attack upon friendly military aircraft, and the Veteran's response to the event or circumstance involved a psychological or psycho-physiological state of fear, helplessness, or horror. 38 C.F.R. § 3.304(f), as amended 75 Fed. Reg. 39843 (July 13, 2010). 

Here, lay statements are not sufficient to verify the in-service stressor because the Veteran was not diagnosed with PTSD in service, is not a "combat veteran," does not have a stressor related to fear of hostile military or terrorist activity and is not a prisoner of war. 38 C.F.R. § 3.304(f) (1-4). Credible supporting evidence is required to establish that the in-service stressor occurred.

A July 2014 VA psychiatry note shows that the Veteran reported that his PTSD is related to watching his friends die and from being "targeted" and "terrorized" in-service. The examiner noted that the Veteran was somewhat vague/generalized about details. The Veteran did not report being assaulted in-service. 

During a September 2014 VA mental health visit, the Veteran reported that his PTSD is related to "near death experiences" in-service. He reported that people tried to kill him multiple times. He also reported that friends of his died in-service. Specifically, he reported "they ran one to death and one they shot and one they drowned." The examiner noted that the Veteran stated it will get him in trouble to talk about it. The Veteran did not report being assaulted in-service. 

A January 2018 VA homeless program initial screening assessment shows that the Veteran denied psychotic symptoms, and the examiner noted that none were evidenced or elicited. The examiner noted that the Veteran reported a mental health history significant for a diagnosis and treatment for anxiety, depression, and PTSD. The Veteran reported a distant history of several inpatient psychiatric stays, the last of which was in 1997. He did not mention any assault in-service. In fact, the assessment is absent of any reports or discussion of any traumatic events in-service. The examiner indicated that military-related PTSD is not a treatment concern for the Veteran. 

A February 2018 VA mental health note shows a diagnosis of PTSD by history per the Veteran's report. 

A July 2018 VA mental health note shows that the Veteran reported first being diagnosed with PTSD 20 years ago by Dr. P., a professor at the University of North Carolina. There is no notation of any mention of any assault in-service or any traumatic event in-service. 

During the August 2018 VA mental disorders examination, the Veteran reported "they took me in the shower [in-service] and made life unpleasant, they threw me down the stairs, kicked me, and threatened my life." The Veteran reported that he has written and produced two television shows, that he has owned a record company since 1978 and that he has worked with "the top recording artists in the world." He reported "I run a global entertainment company, but that's for fun."

The examiner stated that the Veteran was a poor historian about factual data from his past, stating that he often does not remember much or gives only vague answers. The examiner stated that due to the Veteran's clinical presentation during the examination, minimal medical records made available, and time constraints allotted for the examination, "I am unable to provide an accurate mental health diagnosis without resorting to mere speculation."

During a January 2019 private psychological evaluation, the Veteran reported that he was in the military from 1975 to 1984. The examiner noted that the Veteran alleged that he has been working with the military since 2009, training new recruits for special forces. The Veteran reported that military officials attempted to murder him in-service due to someone saying that he witnessed an event. However, the examiner noted that the Veteran was unable to recall being a witness of the suspected event. The Veteran also reported that he was "terrorized, beaten, and forced to watch friends die" in-service. He reported that he and others were "forced" to accept an honorable discharge in exchange for "forgetting about what [he] saw." The Veteran reported that a psychologist previously diagnosed him with dissociative disorder resulting from PTSD. The Veteran also reported that he ran a global entertainment empire in 1998 as a hobby, that he has directed several productions, and that he has trained and/or worked with several famous actors. 

The examiner stated that the Veteran meets the DSM-V criteria for diagnosis of PTSD. However, the examiner noted that the Veteran's report of background information was convoluted and self-contradictory at times regarding timeframe and employment. The examiner also noted that the background provided by the Veteran included several instances of appearing to embellish current activities and hobbies into more elaborate positions. The examiner noted that the Veteran endorsed items on self-report measures which were discrepant from reports given during the interview with the Veteran. For example, the examiner noted that the Veteran reported ongoing symptoms of anxiety and depression which he then denied on self-report measures.

In April 2019, the Veteran submitted an article on bootcamp training events at Parris Island, SC. The article references a January 3, 1976 incident when a servicemember was shot by a drill instructor, and other incidents that occurred elsewhere.

The Veteran contends that he has PTSD that is related to harassment, abuse, and hazing that occurred while he was in basic training at Parris Island, SC. During his April 2021 Board hearing, the Veteran testified that he was assaulted in a shower by a group of drill instructors. He also testified to receiving other abusive treatment. He did not report that he witnessed anyone being shot. 

In an April 2019 statement, the Veteran reported that he endured severe hazing from his drill instructors and staff at Parris Island, SC. He reported that he was assaulted in a bathroom by a group of drill instructors. He reported his belief that he has PTSD related to this and other traumatic incidents of "harassment and hazing" that he experienced in-service. 

An April 2019 VA mental health note shows that the Veteran reported having almost died in bootcamp. He reported that he was assaulted by drill instructors in a shower and was thrown down the stairs in a trash can. He also reported that he witnessed others being abused by drill instructors and was told that he would be killed if he were to report the abuse. 

There are no records contained in the Veteran's service records that indicate that any of his claimed in-service stressors occurred, and there is no indication that documents are missing from the record, or that the record is otherwise incomplete. Thus, there is no credible supporting evidence that the claimed in-service stressors occurred. 

Service connection for PTSD specifically requires medical evidence establishing a diagnosis of the disability in accordance with the DSM-V, credible supporting evidence that the claimed in-service stressor actually occurred, and a link, established by medical evidence, between the current symptomatology and the claimed in-service stressor. 38 C.F.R. §§ 3.304(f), 4.125(a). As with all claims for service-connection, in the absence of proof of a present disability, there can be no valid claim. Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992).

The record does not include a diagnosis of PTSD that conforms to the legal requirements of 38 C.F.R. § 3.304(f), which requires "an in-service stressor and credible supporting evidence that the claimed in-service stressor occurred." Without a verified stressor, there can be no valid diagnosis of PTSD in this case based on the present record.

Apart from the Veteran's account of his claimed in-service stressors, the Veteran is not competent to formally diagnose himself with PTSD, as providing formal psychiatric diagnoses is outside the realm of knowledge of a lay person. Jandreau v. Nicholson, 492 F.3d 1372, 1377 n.4 (Fed. Cir. 2007); see Kahana v. Shinseki, 24 Vet. App. 428, 435 (2011). The statements provided by the Veteran asserting that he has PTSD related to in-service events are not competent and are entitled to no probative weight.

The Veteran's testimony that he was assaulted in-service is directly contradicted by his military personnel records, which show that he made no allegations against drill instructors in-service. Other than his statements regarding his treatment in-service, there is no corroborative evidence of record that the claimed in-service events occurred. The article discussed above details an incident when a servicemember was shot at Parris Island in January 1976 while the Veteran was there. Indeed, one of the Veteran's several reported in-service stressors is that someone was shot. However, the Veteran did not provide any details of the reported shooting, and his most recent reports of in-service stressors do not include a shooting. Rather, his most recent statements involve an assault in a shower and other harassment. The August 2018 VA examiner stated that the Veteran was a poor historian about factual data from his past, stating that he often does not remember much or gives only vague answers. The January 2019 private examiner stated that the Veteran's report of background information was convoluted and self-contradictory at times, that the background provided included several instances of appearing to embellish current activities and hobbies into more elaborate positions, and that he endorsed items on self-report measures which were discrepant from reports given during the interview with the Veteran. Throughout the record, the Veteran has made many different statements regarding in-service stressors. However, the record does not corroborate any of them. 

Instead, the record shows that the Veteran is not a reliable historian, and the August 2018 VA and January 2019 private examiners note some of the problems with information provided by the Veteran. To the extent that the January 2019 examiner diagnosed PTSD, the diagnosis was based on the Veteran's own wholly unsupported factual account and is not probative. Nieves-Rodriguez v. Peake, 22 Vet.App. 295 (2008) (the probative value of a medical opinion depends upon whether it is factually accurate, fully articulated, and contains sound reasoning for the conclusion,

Moreover, to the extent that the Veteran was discharged because of a personality or character defect, it is not subject to a grant of service connection. 38 C.F.R. §§ 3.303(c), 4.9, 4.127. 

(CONTINUED ON THE NEXT PAGE.)

In conclusion, the preponderance of the evidence weighs against service connection for PTSD. The Veteran's accounts of in-service stressors are not substantiated. Statements made by the August 2018 VA and January 2019 private examiners show that the Veteran is not a reliable historian. As the preponderance of the evidence is against the claim, the benefit-of-the-doubt doctrine is not applicable. 38 U.S.C. § 5107; 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 53-56 (1990). The claim is denied.

 

 

Vito A. Clementi

Veterans Law Judge

Board of Veterans' Appeals

Attorney for the Board Timothy T. Emmart

The Board's action is binding only in this case. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.